## VENTURA & OJAI VALLEY RY. CO. v. COLLINS.*

L. A. No. 232; October 3, 1896.

46 Pac. 287.

Stock Subscription.—A Complaint on a Stock Subscription is
not inconsistent because alleging that defendant, by his subscription,
agreed to pay a certain amount "when and as it might be demanded,"
while this promise is not expressed, but merely implied, in the sub-
scription set out as an exhibit.

Stock Subscription—Construction.—In a Stock Subscription, by
which the subscribers agreed "to take the number of shares set oppo-
site our names respectively, and thereon to pay the amount in cash
named, to wit, ten per cent of the amount of stock by us subscribed,
to B., treasurer of said corporation," opposite the name of each sub-
scriber, under the words "Stock Subscribed," was written "$2,000,"
and under the words "Amount of Cash" was written "$200 pd." Held,
that the obligation on the subscription was not limited to the $200,
but this amount was to be paid contemporaneously with the subscrip-
tion, and the balance on call.[1]

*See opinion in bank following this.

[1] Cited in the note in 93 Am. St. Rep. 359, on the liability to cor-
porations of subscribers to their capital stock.

APPEAL from Superior Court, Ventura County; B. T. Williams, Judge.

Action by the Ventura and Ojai Valley Railway Company against J. S. Collins. Judgment for plaintiff. Defendant appeals. Affirmed.

Blackstock & Ewing for appellant; Barnes & Selby for respondent.

VANCLIEF, C.—The plaintiff is a corporation organized in accordance with the laws of this state for the purpose of constructing and operating a railroad in this state. Its capital stock, as fixed by its articles of incorporation, is $250,000, divided into two thousand five hundred shares of $100 each, of which shares only two hundred and sixty had been subscribed prior to the commencement of this action, and two hundred of which were subscribed prior to the incorporation. Subsequent to the incorporation, in June, 1892, the defendant subscribed for twenty shares at the price of $2,000, and at the same time paid to plaintiff ten per cent of the par value thereof, and on June 15, 1893, paid a call of the corporation for an additional ten per cent of the subscription, and on July 13, 1893, paid another call for ten per cent, said payments aggregating $600. On June 6, 1895, the corporation made another call on all the subscribers for forty per cent of their subscriptions, the defendant's proportion of which was $800. The defendant refused to pay this last call, and thereupon this action was commenced to enforce payment thereof. The defendant's demurrer to the complaint having been overruled, and he having declined to answer the complaint, judgment was rendered against him for said sum of $800, with interest and costs. Defendant brings this appeal from the judgment, upon the judgment-roll, and asks a reversal of the judgment on the alleged ground that the court erred in overruling his demurrer.

The alleged grounds of the demurrer are that the complaint is ambiguous and uncertain and that it does not state a cause of action. In addition to the facts above stated the complaint contains the following allegations: "(4) That prior to the incorporation of the plaintiff corporation there was actually subscribed to its capital stock for each mile of the contem-

plated work proposed by said corporation $1,000 per mile, to wit, two hundred shares of stock of the corporation of the par value of $100 each, aggregating $20,000, and thereon there was paid for the benefit of the corporation, to a treasurer elected by the subscribers, ten per cent of the amount subscribed, the agreement for which is more fully set forth in a copy of the original agreement attached to this complaint, and marked 'Exhibit A,' reference being thereto had. (5) That thereafter, and subsequent to the incorporation of the plaintiff, to wit, on or about the first day of June, 1892, defendant herein subscribed and agreed to take twenty shares of the capital stock of said plaintiff corporation, and then and there agreed to pay for the same the sum of $2,000, when and as it might be demanded by said plaintiff, a copy of his (defendant's) subscription to the capital stock of plaintiff corporation being hereto annexed, and marked 'Exhibit A'; and that said defendant, pursuant to said subscription, thereupon and thereafter became and was, and ever since then has been and now is, a stockholder of plaintiff corporation, holding and owning twenty shares of the capital stock of plaintiff corporation of the par value of $100 each; that said defendant has not paid the said sum of $2,000, or any part thereof, except as hereinbelow stated, though often requested so to do by the plaintiff.'' ''(8) That in the management of its business operations and in the construction of its railroad this corporation expended about $16,000, and therein and for its said purposes purchased material, and agreed to pay for the same, and borrowed money, and that the aggregate of its said obligations was about $10,500 over and above the aggregate of amounts received by it from its stockholders. That to provide the funds to pay the indebtedness of said corporation so created in and about its business and in and about the construction of its railroad as hereinbefore stated, plaintiff corporation herein demanded from each and all of the subscribers to its capital stock and stockholders an additional payment of forty per cent of the amount of their several subscriptions respectively. (9) That on or about the sixth day of June, 1895, plaintiff herein demanded from defendant the payment of the sum of $800, being said forty per cent of the amount of the capital stock for which defendant had subscribed, as hereinbefore stated, and had agreed to pay, and forty per cent of the par value of the stock of the plaintiff

corporation then held and owned by defendant. (10) That said defendant refused to pay said sum of $800, so demanded by plaintiff herein, or any part thereof, and still refuses to pay the same, or any part thereof, though often requested so to do by plaintiff herein.''

The following is a copy of Exhibit A, referred to in the above:

## "EXHIBIT A. AGREEMENT.

''Whereas, for the development of the material interest of the town of San Buenaventura and the territory embraced within the Ranchos Santa Ana and Ojai, it is deemed necessary to have railway communication in and between said town and territory, and in the nature of a street railway; and whereas, a local corporation can best attain such object: Now, therefore, we, the undersigned, hereby agree to and with each other that we will together form a corporation to be known as the Ventura Railway Company, having all the corporate powers that may be deemed necessary or appropriate in the premises. We further agree that we will subscribe to the capital stock of said corporation in and at its organization the sum severally set by us opposite our respective names, and thereon pay in cash ten per cent in accordance with the law regulating the formation of railway corporations, and upon the subscription hereto of not less than $20,000; that such corporation shall be formed by the subscribers hereto for the purposes suggested herein.

| Subscribers. | Stock Subscribed. | Amount of Cash. |
|---|---|---|
| W. S. Chaffee | $2,000 | $200 Pd. |
| Richard Robinson | 2,000 | 200 Pd. |
| Joseph Hobart | 1,000 | 100 Pd. |
| E. P. Foster | 2,000 | 200 Pd. |
| K. P. Grant | 2,000 | 200 Pd. |
| E. S. Hall | 2,000 | 200 Pd. |
| J. K. Gries | 2,000 | 200 Pd. |
| G. W. Chrisman | 2,000 | 200 Pd. |
| W. H. Wilde | 2,000 | 200 Pd. |
| A. D. Barnard | 2,000 | 200 Pd. |
| A. Bernheim | 1,000 | 100 Pd. |

''Whereas, under and pursuant to the foregoing agreement and subscription, there was incorporated the Ventura & Ojai Valley Railway Company, to the capital stock of which there

was subscribed the amounts above named by the parties named respectively: Now, therefore, we, the undersigned, subscribe and agree to take the number of shares set opposite our names, respectively, and thereon pay the amount in cash named, to wit, ten per cent of the amount of stock by us subscribed, to A. Bernheim, treasurer of said corporation:

| Subscribers. | Stock Subscribed. | Amount of Cash. |
| --- | --- | --- |
| J. S. Collins | $2,000 | $200 Pd. |
| F. Hartman | 2,000 | 200 Pd. |
| J. R. Thorpe | 2,000 | 200 Pd." |

1. Counsel for appellant contend that the averment in the fifth paragraph of the complaint, that the defendant, by his subscription, agreed to pay the sum of $2,000 "when and as it might be demanded," is inconsistent with the subscription itself, as exhibited and made a part of the complaint, because, they say, there is no express promise of Collins, Hartman and Thorpe, who subscribed after the incorporation, to pay more than ten per cent of the $2,000 subscribed by each of them. The pleader evidently attempted to state the subscription contract according to its legal effect; and, if he did so, the alleged inconsistency does not exist. The only question, therefore, to be considered is one of construction of the subscription agreement. Read in the light of the circumstances alleged in the complaint, I think the subscription agreement implies a promise to pay the full sum subscribed upon such demands or calls as should be made therefor by the corporation; and surely whatever is implied in an agreement, though not expressed, may consistently and properly be alleged in a complaint upon such agreement. A subscriber for stock is one who has entered into an express contract to take a certain definite number of shares of the original issue of stock: Cook, Stock, Stockh. & Corp. Law, sec. 10, and notes. "The contract of subscription for shares of stock in an incorporated company may be entered into in various ways. Whenever an intent to become a subscriber is manifested, the courts incline, without particular reference to formality, to hold that the contract of subscription subsists. . . . . Formal rules are, for the most part, disregarded": Id., sec. 52, and notes. "A subscription for shares implies a promise to pay for them, and this promise sustains an action to collect, without proof of any particular consideration. This rule

of law is sustained by the great weight of authority. The signing of the subscription paper is an implied promise to pay the subscription'': Id., sec. 71. ''As a general rule, a call must be made in order to render a subscription, or any part thereof, due and payable to the corporation. A contract of subscription, unlike other contracts to pay money, is a promise to pay; but, by implication of law, the payment is to be only at such times and in such part payments as may be designated by the corporate authorities in a formal declaration known as a 'call.' In other words, the subscription is a debt payable at a future time. The time when it shall be paid is indefinite until fixed by a call'': Id., sec. 105, and notes. The subscription under consideration is an agreement ''to take the number of shares set opposite our names, respectively, and thereon to pay the amount in cash named, to wit, ten per cent of the amount of stock by us subscribed, to A. Bernheim, treasurer of said corporation.'' The amount in cash named is $2,000, set opposite the name of the defendant. It seems manifest that it was not intended by the phrase under the videlicet to limit the $2,000 obligation to ten per cent of that sum. The ten per cent mentioned was evidently intended to designate merely that portion of $2,000 which was to be paid contemporaneously with the subscription. Indeed, this construction was practically given it by the acts of the defendant in voluntarily paying two additional calls of ten per cent each, long after the subscription, and is the only construction which gives effect to all the language of the contract. The construction contended for by counsel for appellant would make the clause under the videlicet repugnant to that which precedes it, which is not allowable in construing a contract if it can be avoided consistently with the apparent object of the contract and the intent of the parties, which object and intent are to be ascertained by a view of all parts of the contract in connection with the circumstances under which it was made, and the subsequent acts of the parties tending to show how they understood it. Even in pleading, where the office and effect of the videlicet has been somewhat diverse, it was never allowed an effect repugnant to that which it purported to explain or define: Am. & Eng. Ency. of Law, and authorities cited. That which the videlicet clause is said to qualify and define in this case is perfectly explicit, and could not have been made more so by

definition or explanation. Even on the face of the instrument, and exclusive of the circumstances and subsequent acts of the parties, it is apparent that the parties did not intend to say that the agreement to pay $2,000 meant the payment of only ten per cent of that sum, but only that ten per cent was to be paid at the time of the subscription; and this intent is satisfactorily verified by the subsequent acts of the parties in accordance therewith.

2. It is claimed by appellant that the complaint is ambiguous and uncertain as to whether the action is founded upon the subscription agreement or upon the statutory liability of a stockholder to the creditors of the corporation. But I perceive no ambiguity nor uncertainty in this respect. The action is brought by the corporation, and not by a creditor thereof, and unequivocally counts upon defendant's subscription to the capital stock of the corporation.

3. It is claimed that the complaint does not state a cause of action for the same reasons that it is said to be ambiguous and uncertain, and no other reason is specified by counsel. These reasons having been disposed of, no further consideration of this ground of demurrer is necessary. I think the judgment should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.

March 11, 1897.

PER CURIAM.—Upon the authority of Ventura etc. Ry. Co. v. Hartman, 116 Cal. 260, 48 Pac. 65, this day decided, the judgment entered herein is reversed, and the superior court is directed to sustain the demurrer to the complaint.